Haywood JOHNSON

v.

Joseph A. CALIFANO, Jr.,[1] Secretary, Department of Health, Education and Welfare.

Civ. A. No. Y–76–682.

United States District Court, D. Maryland.

May 31, 1977.

---

1. Joseph A. Califano, Jr. succeeded F. David Mathews as Secretary of Health, Education and Welfare on January 25, 1977. Pursuant to 42 U.S.C. § 405(g) (1970), the appropriate substitution has been made.

303

Michael A. Millemann, Baltimore, Md., for plaintiff.

Daniel F. Goldstein, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

The plaintiff, Haywood Johnson, filed this action on May 10, 1976 to obtain judicial review of the final decision of the Secretary of Health, Education and Welfare by which his claimed entitlement to benefits under the disability insurance provisions of the Social Security Act, 42 U.S.C. § 301 (1970), *et seq.*, were denied.

Plaintiff's original application for disability insurance benefits was filed on December 4, 1973 alleging disability beginning on March 1, 1973 due to arthritis and a back condition. (Tr. 84).[2] That application was initially denied on February 28, 1974 by the Bureau of Disability Insurance. (Tr. 88). Following Mr. Johnson's request for reconsideration, filed May 4, 1974, his claim was reconsidered and again denied on July 5, 1974. (Tr. 90–91).

Mr. Johnson then requested a hearing before an Administrative Law Judge on July 15, 1974. Pursuant to his request, a hearing was held before Administrative Law Judge Peter D. Caloger on May 15, 1975. (Tr. 21). At that initial hearing, Mr. Johnson was advised by the Administrative Law Judge of his right to be represented by counsel. Mr. Johnson decided that he wished to be represented by counsel and the hearing was recessed without the taking of testimony. (Tr. 25).

On July 8, 1975, the hearing was reconvened and Mr. Johnson appeared represented by retained counsel. Mr. Johnson testified under oath at that hearing and was questioned by both the Administrative Law Judge and his attorney. (Tr. 26–56).

A continuation of that hearing was held on August 20, 1975. Mr. Daniel D. Mauchline, a vocational expert, was called by the Administration to testify concerning those positions for which Mr. Johnson would continue to have the functional capacity to perform. (Tr. 57–83).

Upon the basis of this succession of hearings and the submission of additional evidence on behalf of the plaintiff following those hearings, the Administrative Law Judge issued a written hearing decision in which he found that claimant suffered from mild degenerative arthritis and that, although his condition would prevent him from returning to his previous occupation as a press operator for a brick company, he retained the residual physical capacity to perform an alternative substantial gainful employment. Accordingly, the Administrative Law Judge denied Mr. Johnson's claimed entitlement to disability benefits. (Tr. 11).

The plaintiff was dissatisfied with that decision and, on February 10, 1976, filed a request for a review of that hearing decision before the Appeals Council of the Administration, alleging simply that the decision was erroneous. (Tr. 4). The Appeals Council reconsidered the evidence in the case and determined that the decision of the Administrative Law Judge was correct. The affirmance by the Appeals Council, dated April 1, 1976, became the final decision of the Secretary of Health, Education and Welfare for purposes of review in this court. (Tr. 3). 20 C.F.R. § 422.210.

## PLAINTIFF'S MEDICAL HISTORY

Haywood Johnson was born on December 21, 1921 and at the time of the hearing before the Administrative Law Judge was 5'8" tall and weighed 195 pounds. Mr. Johnson completed five years of formal education and began the sixth year, but left school at the age of fourteen years due to economic reasons. After leaving school, plaintiff worked in a cotton mill hauling cotton in North Carolina. (Tr. 35). Thereafter, he worked at Ft. Bragg as a water boy on a construction gang. (Tr. 36). Following that employment, he worked for ap-

2. References are to the Court Transcript, forwarded by the Secretary as part of his Answer and made part of the court file in this case.

proximately one year as a plumber's helper carrying and threading large pieces of pipe. (Tr. 37). Finally, he worked for a period of 32 years until the time of the alleged onset of disability as an operator making different types of bricks. (Tr. 38). He testified that he left that employment because of swelling in his legs, knees and feet. (Tr. 39–40).

In pertinent part, the medical records reveal that Mr. Johnson was examined on August 19, 1971 at the emergency room of the Johns Hopkins Hospital, complaining of a growth on his back and a history of pain in the cervical area with pain radiating to his right arm. No paresthesia, weakness or numbness was observed. The pain was said to be worse on rainy days. X-ray examination on that date revealed evidence of degenerative changes at the level of C–5, 6 with anterior spurring of the vertebral bodies. Slight joint space narrowing was present, with no evidence of posterior spurring, narrowing of canal or subluxation. It was finally diagnosed that Mr. Johnson was suffering from osteoarthritis of the cervical spine and that he had a lipoma on his back. (Tr. 134, 135).

On April 10, 1973, Mr. Johnson was seen at Bon Secours Hospital for excision of the lipoma on his back. Novocain was administered and the procedure was carried out, apparently without complication. (Tr. 108).

On December 15, 1973, Dr. G. E. Rudman, plaintiff's personal physician, reported that Mr. Johnson had suffered swelling in both knees and both ankles from time to time, although the range of motion in the affected joints was fairly good. Dr. Rudman noted that plaintiff's arthritis had been so painful that he had been unable to work since July 11, 1972. (Tr. 111). Dr. Rudman also observed that Mr. Johnson had symptoms of arthritis in his shoulders, back, knees and ankles. (Tr. 112). High blood pressure was also diagnosed on that date based upon recorded blood pressures of 182/110. (Tr. 113, 114). Dr. Rudman's final diagnosis was of high blood pressure and arthritis of the shoulders, back, knees and ankles of a chronic nature. He pre-scribed Tylenol and Butazolidin Alka occasionally for periods of three to four days when the pains became severe. (Tr. 114).

On January 29, 1974, an orthopedic consultation was conducted by Dr. G. Edward Reahl. (Tr. 115–116). Dr. Reahl noted plaintiff's complaints of constant pain in the lower back with radiation across the shoulders, as well as some aching upon bending and twisting and turning.

Examination of Mr. Johnson's back revealed a slight pelvic tilt to the right with some anatomical flattening, but without spasm. Diffuse lumbo-sacral tenderness was elicited with restricted back motion on flexion and extension. There was no gross neurologic deficit in the lower extremities, and straight leg raising was 80 degrees bilaterally with hamstring tightness. Examination of plaintiff's knees revealed no effusion or ligamentous instability in the knees. Mild patello-femoral crepitus was noted, but his thighs were equal and knee motion was full. No obvious swelling in the lower extremities was observed. X-ray examination showed slight L–4/5 spurring and slight L–5 and S–1 narrowing. The X-rays were otherwise negative for fracture or dislocation. Dr. Reahl noted Mr. Johnson's multiple complaints, as well as the existence of some degenerative disc disease of a mild nature in the lumbar area. He concluded, however, that "I find no reason, orthopedically, why he cannot return to work in his previous capacity. Williams type exercises would be helpful as well as salicylates as needed. I would offer no further orthopedic procedures." (Tr. 116).

On April 10, 1974, in response to a series of questions from Dr. L. M. Serra, medical advisor of the Division of Vocational Rehabilitation, Dr. Rudman reported that plaintiff exhibited no objective evidence of sensory or motor loss, muscle spasm, or reflex abnormalities, but that he had a limitation of motion in his back due to the pain which he experiences. Dr. Rudman stated his opinion that Mr. Johnson would not be able to resume his usual work. He suggested, however, that Mr. Johnson be examined by the Division of Vocational Rehabilitation to

ascertain what his limitations of motions are because "it is difficult to estimate same on paper". (Tr. 117).

At the hearing before the Administrative Law Judge, Mr. Johnson testified that the company physician at General Refractories, for whom he had previously worked, would not allow him to return to work after he left and that as a result he receives a disability pension from General Refractories. (Tr. 51). A request for particulars sent to General Refractories was answered by referring Dr. Serra to Mr. Johnson's personal physician. It was stated that the company doctor "is unable to answer your enclosed correspondence". (Tr. 118).

Another orthopedic consultation was performed by Dr. Reahl on June 20, 1974. An examination of plaintiff's back and lower extremities was essentially the same except that generalized tenderness throughout the lumbar region, the body of the sacrum, and paraspinal muscles and sacroiliac joints was noted. Dr. Reahl stated that plaintiff tends to guard the extremes of flexion and extension, and that joint motion in the lower extremities was voluntarily and actively restricted. Dr. Reahl concluded that, "I find very little orthopedically that would preclude him from working. I do not feel that he needs any particular restrictions. Williams exercises and hamstring stretching exercises may prove helpful but unless his hypertension would preclude it he is capable of full active employment." (Tr. 119–120).

On January 13, 1975, Mr. Johnson was seen at the Johns Hopkins Hospital Outpatient Department complaining of pain which was thought by the examiner to be due to constipation. His blood pressure was recorded at 140/96 which was found to be indicative of moderate, improving hypertension. (Tr. 131).

On March 27, 1975, Dr. Rudman reported that he had seen Mr. Johnson very irregularly over a period of about four years. At the most recent examination conducted on December 9, 1974, plaintiff's blood pressure was recorded at 130/80 and physical examination was negative except for arthritis. Dr. Rudman diagnosed generalized arthritis

of the shoulders, knees and spine, and questionable hypertension. He prescribed Tylenol and another medication which is not legibly written. (Tr. 126).

On September 3, 1975, plaintiff's legal representative wrote to the Administrative Law Judge and informed him that Mr. Johnson had last been seen by Dr. Rudman on August 18, 1975 and that his blood pressure was recorded at 130/80 at that time. (Tr. 143).

## STANDARDS OF REVIEW

In order to be eligible for disability benefits the claimant must establish that he is under a disability within the meaning of the Act. "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as follows:

Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . .

Section 423(d)(2)(A) provides that:

An individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . .

The burden is on the claimant to furnish medical and other evidence of the existence of a disability. 42 U.S.C. § 423(d)(5) (1970). The sole issue before this Court is whether there is "substantial evidence" to support the Secretary's decision. 42 U.S.C. § 405(g) (1970). The fact that the record taken as a whole might support a different conclusion is immaterial. The language of Section 405(g) precludes a *de novo* judicial proceeding even if the Court should disagree with the decision so long as it is supported by substantial evidence. *Whiten v. Finch*, 437 F.2d 73 (4th Cir. 1971); *Blalock v. Richardson*, 483 F.2d

773 (4th Cir. 1972). The phrase "substantial evidence" has been defined by the Fourth Circuit Court of Appeals to be:

> . . . evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".* (emphasis added).

*Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966); *Blalock v. Richardson, supra,* at 776.

■ There are four elements of proof to be weighed in determining whether there is substantial evidence to support the Secretary's decision. These are:

1. The objective medical facts;
2. The diagnoses and expert medical opinions of the treating and examining physicians on subsidiary questions of fact;
3. Subjective evidence of pain and disability testified to by the claimant and corroborated by family and neighbors;
4. The claimant's educational background, work history, and present age.

*Underwood v. Ribicoff,* 298 F.2d 850, 851 (4th Cir. 1962); *Blalock v. Richardson, supra.* Thus, it is for the Secretary in the first instance to weigh the evidence and resolve conflicts therein, and the purpose of review in this Court is not to substitute the view of this Court for that of the Secretary so long as there is substantial evidence to support the Secretary's conclusion.

## CONCLUSIONS OF LAW

Application of these standards of review to the facts of the instant case leads this Court to conclude that the finding of the Secretary that Mr. Johnson is not disabled is supported by substantial evidence and must, therefore, be affirmed.

■ The medical evidence of record was in substantial conflict concerning Mr. Johnson's ability to engage in substantial gainful activity. It appears that the Administrative Law Judge did not wholly accept either side of the factual dispute. Although Dr. Reahl suggested that the claimant could return to his previous work, (Tr. 116), it is apparent that the Administrative Law Judge accepted the assertion that he suffered from some limitation which would preclude him from engaging in his previous heavy work. Thus, his *prima facie* showing of inability to engage in his previous occupation was accepted, and the Secretary had the burden of showing that Mr. Johnson retained the functional capacity to engage in alternative work which exists in the national economy. *Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir. 1975).

To sustain that burden, the Administration produced a vocational expert, Mr. Daniel Mauchline, to testify concerning the vocational skills retained by Mr. Johnson, and the jobs which he would be able to perform.

After being familiarized with the medical evidence and plaintiff's vocational history, Mr. Mauchline identified positions as a porter, elevator operator, dishwashing machine operator, and bus boy in a restaurant. (Tr. 67–69). Of these, all would require some lifting and significant periods on his feet, except that of elevator operator, which was described as a sedentary position without lifting or carrying. (Tr. 68). This position was later clarified and described as one in which an employee would be able to alternatively sit or stand as he chose. (Tr. 144, 146). Each of the listed positions was said to exist in substantial numbers in the local economy. (Tr. 67, 76).

Most of the suggested forms of alternative substantial gainful activity appear to be compatible with the plaintiff's condition. Mr. Johnson is able to move around alone, make use of public transportation, and care for his own basic needs. (Tr. 33, 44–45, 84).

The medical reports concerning Mr. Johnson's two alleged impairments, generalized arthritis and high blood pressure, are conflicting. Dr. Reahl noted plaintiff's subjective complaints of pain, yet concluded that he was not disabled. He recommended as-

pirin as needed for the pain, and, in fact, suggested that exercise would be of benefit. (Tr. 116). Plaintiff's personal physician, while noting his medical condition, never expressed his own opinion as to whether Mr. Johnson would be able to return to work. On the contrary, it appears that he restricted Mr. Johnson to light duty work, but sent him back to work otherwise unrestricted. (Tr. 104).

As to the diagnosis of hypertension, it was described as moderate and improving on January 13, 1975, and his recorded pressures were 140/95, down from a previous high of 180/110. (Tr. 131). The most recent reading of record, taken on August 18, 1975, was 130/80. (Tr. 143). Thus, this condition has continued to show improvement. The same reading on December 9, 1974, lead Dr. Rudman to term the existence of hypertension "questionable". (Tr. 123, 126).

■ In sum, based upon a searching inquiry of the record in this case, *Oppenheim v. Finch*, 495 F.2d 396 (4th Cir. 1974), ample evidence is found to support the conclusions of the Secretary, and his determination will be affirmed.

As an alternative to the entry of summary judgment in his favor, plaintiff has moved that the case be remanded to the Secretary for reconsideration. The standard under which such a motion is determined is whether the movant has shown "good cause" to justify such action. 42 U.S.C. § 405(g) (1970).

■ It is first suggested that the Administrative Law Judge failed to evaluate the plaintiff's subjective complaints of pain and other symptoms and make specific findings relative thereto. It is beyond question that the Secretary must consider the subjective complaints of a claimant, and that pain, in and of itself, may be so severe as to render a claimant disabled, even though those symptoms are not supported by objective findings. *Blalock v. Richardson, supra; Underwood v. Ribicoff, supra; Brandon v. Gardner*, 377 F.2d 488, 490 (4th Cir. 1967).

■ It is also quite correct that an Administrative Law Judge should make findings of fact as to both ultimate and subsidiary facts which are sufficiently detailed that a reviewing court may determine the rationale for the ultimate decision. *Smith v. Weinberger*, 394 F.Supp. 1002, 1006 (D.Md.1975).

■ As often occurs in actions of this type, plaintiff reasons from these two lines of cases that the Administrative Law Judge failed to make a sufficiently detailed finding of fact concerning a claimant's subjective testimony. This Court would frame the question presented thusly: "Is it in all cases a requirement that the Administrative Law Judge state in his hearing decision that he believes or disbelieves the claimant's testimony concerning pain?" Review of the cases in this area and the rationale for requiring a degree of specificity in hearing decisions makes it clear that no such requirement is imposed.

First, it is clear that Mr. Johnson's subjective complaints of pain were considered by the Administrative Law Judge. It is true that he made no specific finding regarding these complaints. Nevertheless, it is clear that he did consider that evidence and, in fact, gave it some credence. Two references were made to the pain which Mr. Johnson experiences, as follows:

> In his medical reports of December, 1973, March, 1975, and September, 1975, Dr. Rudman indicated he was treating the claimant very irregularly for arthritis and questionable hypertension with mild medication of tylenol and occasionally Butazolidin Alka for 3 or 4 days when pains become severe, (Exhibit 10, 17, 21).

(Tr. 10).

> Medical evidence herein contains no findings that the claimant has any significant limitation on motion of the extremities, inability to move about, nor any other restriction of daily activities. Occasional acute problems are treated very irregularly with mild pain relievers.

(Tr. 10).

■ It is obvious that the Administrative Law Judge took the plaintiff's protestations

of pain into account, and it is readily inferable from the quoted passages that, consistent with his duty as finder of facts, he concluded that the pains to which plaintiff testified were insufficient to render him disabled. The plaintiff's claim that the decision was deficient in this regard, and his implied assertion that the Administrative Law Judge must specifically rule on the claimant's credibility, are insubstantial. In short, the record and hearing decision on this point are sufficiently detailed to permit informed judicial review. *Storck v. Weinberger*, 402 F.Supp. 603 (D.Md.1975), and *Smith v. Weinberger, supra*, require no more.

Plaintiff next complains that the Administrative Law Judge failed to support his conclusions with explicit findings or factual analysis. This allegation, closely related to that previously discussed, raises questions concerning the degree to which an Administrative Law Judge must articulate the precise reasoning behind his ultimate decision. Reliance for the plaintiff's assertion is placed on a line of cases holding, in general, that the Administrative Law Judge must make specific findings as to subsidiary facts, *Smith v. Weinberger, supra*, and that the Administrative Law Judge's findings and conclusions, as well as his underlying analysis, must appear within his hearing decision. *Williams v. Celebrezze*, 359 F.2d 950, 952 (4th Cir. 1966).

█ These cases and the others cited in support are inapposite to the instant action. Each presented circumstances where a glaring error was evident on the part of the Administrative Law Judge due to a failure to make explicit findings concerning alternative employability, *Williams, supra*, at 952, willful refusal to undergo prescribed treatment, *Smith, supra*, at 1008–09, or other similar circumstances. No support is found in the cases or elsewhere for the proposition that the Administrative Law Judge must specifically articulate his reason for accepting one of two diametrically opposed medical reports which are otherwise facially valid. While the cases do set forth a broad and general requirement of

articulation of reasons, this Court is not persuaded that it was thereby intended that the Administrative Law Judge's mere failure to specify the rationale for a particular subordinate decision is *per se* a factor requiring remand.

Finally, plaintiff contends that the Secretary did not adequately discharge the burden imposed under *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975), that, once disability to engage in his previous customary occupation is shown, the Secretary must demonstrate that the claimant is physically and vocationally suited to engage in an alternative form of substantial gainful activity which exists in the national economy.

Two bases are asserted in support of this complaint. First, plaintiff states that the evidence of subjective pain was not made a part of the hypothetical questions posed.

█ Of course, the opinions expressed by any expert are only of value insofar as they are based upon factual assumptions which are fairly supported in the record. *Chester v. Mathews*, 403 F.Supp. 110, 118 (D.Md.1975).

█ In this case, the vocational expert was not present when the claimant gave the bulk of his testimony regarding pain at the first hearing. Rather, he testified at the second hearing. Nevertheless, while it is true that the vocational expert did not personally hear the subjective testimony, and he was not apprised in intimate detail of the particular complaints, this Court concludes that there was a sufficient factual predicate for the opinions expressed, including Mr. Johnson's subjective complaints of pain. He was informed generally of the swelling of plaintiff's feet, (Tr. 61), and he was given full particulars as to the medical evidence. (Tr. 59–64). In fact, he demonstrated some familiarity with plaintiff's symptoms when he concluded that his former occupations would be beyond his residual capacity. (Tr. 66). Moreover, the vocational expert was then advised more fully of Mr. Johnson's subjective complaints by way of additional personal testimony. (Tr. 71–75). Nevertheless, he did not recant his

opinions that Mr. Johnson was vocationally suited for numerous specified positions, despite an opportunity to do so. (Tr. 75–79).

In any event, the purpose of a vocational expert's testimony is to demonstrate a claimant's *vocational*, as opposed to *medical*, capacity to perform certain jobs. *McLamore v. Weinberger*, 538 F.2d 572, 575 (4th Cir. 1976); *Taylor v. Weinberger, supra*, at 667. It is the function of the Administrative Law Judge, rather than the vocational expert, to pass upon the severity of a claimant's pain.

It is clear that the Administrative Law Judge believed that Mr. Johnson suffered from some pain, but that it was not of sufficient severity to be disabling. The vocational expert was informed that some pain was experienced, and made certain vocational recommendations with those subjective complaints in mind. Thus, his opinion was fairly supported by evidence contained in the record, and it cannot be said that the Administrative Law Judge's reliance thereon is not supported by substantial evidence.

Accordingly, no good cause is found to justify remanding this case to the Secretary for reconsideration.

This case is before the Court on cross-motions for summary judgment filed by the parties pursuant to Rule 56, F.R. Civ.P. Summary judgment is appropriate only if:

> . . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

None of the material facts in this case are contested by the parties. A determination of whether the Secretary's decision is supported by substantial evidence presents only a question of law to which the summary judgment procedure is particularly applicable. *Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); 6 Moore's Federal Practice, § 56.17[3].

Having found that there is no genuine issue as to any material fact and that only issues of law exist which are properly determined by this Court, and further that the Secretary's decision is supported by substantial evidence, it follows that summary judgment should be granted in favor of the Secretary.

Accordingly, it is, this 31st day of May, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's motion for summary judgment be, and the same is hereby, DENIED.

2. That plaintiff's motion for remand be, and the same is hereby, DENIED.

3. That the defendant's motion for summary judgment be, and the same is hereby, GRANTED.