**James W. PROCTOR, Jr.**

v.

**Richard S. SCHWEIKER**[1]**, Secretary, Department of Health and Human Services.**

**Civ. A. No. Y 80–1694.**

United States District Court, D. Maryland.

Sept. 22, 1981.

---

1. Richard S. Schweiker has succeeded Patricia R. Harris as Secretary of Health and Human Services, and, pursuant to 42 U.S.C. § 405(g) (1976), the appropriate substitution has been made.

Kevin M. Noland, Mount Rainier, Md., for plaintiff.

Glenda G. Gordon, Asst. U. S. Atty., Baltimore, Md., for defendant.

MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiff, James W. Proctor, Jr., filed this action pursuant to 42 U.S.C. § 405(g) for review of a final decision by the defendant, the Secretary of Health and Human Services (hereinafter referred to as "the Secretary"), terminating disability insurance benefits which he had been awarded under Title II[2] of the Social Security Act. This case is presently pending on cross motions for summary judgment and plaintiff's alternative request for remand. No hearing is deemed necessary at this time. Local Rule 6.

On February 28, 1977, plaintiff filed an application for disability insurance benefits, alleging therein that he became disabled on August 8, 1976 due to ruptured spinal discs. (Tr. 68–71). The Secretary found on May 26, 1977 that plaintiff had in fact established a disability beginning August 8, 1976, and, consequently, awarded plaintiff continuing disability insurance benefits. However, on January 25, 1979, the Secretary determined that plaintiff's disability had ceased in November of 1978. Accordingly, disability insurance benefits were terminated. (Tr. 73–74). The Secretary's initial decision to terminate plaintiff's benefits was upheld on reconsideration. (Tr. 80–81). Plaintiff was subsequently granted a hearing before an Administrative Law Judge (ALJ) so that his claim could be considered *de novo*. (Tr. 21–67). On February 15, 1980, the ALJ decided that plaintiff's back impairment was not of disabling severity because plaintiff retained the residual functional capacity to perform sedentary labor. (Tr. 8–15). Plaintiff submitted two additional medical reports for the Appeals Council's consideration, but the ALJ's decision was nevertheless affirmed on March 24, 1980 and May 2, 1980. (Tr. 3–5). Plaintiff sought review of the Secretary's decision in this Court by filing the instant complaint on June 30, 1980.

**2.** 42 U.S.C. §§ 416(i) and 423.

At the administrative hearing, plaintiff testified that he was born on November 21, 1937 and has a high school education. (Tr. 41, 50). He has worked as a school bus driver and a night manager/clerk at a liquor store. (Tr. 24–36). Plaintiff's work as a bus driver involved driving students both to school and on "activity runs." (Tr. 25). He drove a full eight hour shift and had to operate a clutch. In addition, plaintiff was required to clean the interior of the bus periodically, check underneath of the bus for oil leaks, and wash the bus once a week. (Tr. 27). As a manager/clerk in the liquor store, plaintiff had to lift cases of beer and liquor weighing between thirty-five and fifty pounds. (Tr. 31). He also operated the cash register, set up window displays, dusted shelves, took inventory while standing on a ladder, mopped floors, stocked the coolers daily, and was generally responsible for the store when the owners were not present. (Tr. 32–36). Plaintiff testified that his back problems prevent him from sitting or standing for more than fifteen or twenty minutes at a time. (Tr. 36–37). He complained of difficulty in sleeping, paralysis in his left leg (Tr. 37), inability to bend or lift (Tr. 40), urinary incontinence (Tr. 46), and muscle spasms with accompanying pain in his back. (Tr. 53–54). Plaintiff takes Tylenol 4 for his pain. (Tr. 45). He sometimes drives his car a distance of five miles or less (Tr. 42), attends church, arranges the supper dishes after his wife places them on the table (Tr. 45), walks short distances in his backyard for exercise (Tr. 47), and watches television (Tr. 48). Plaintiff, however, has difficulty in getting in and out of the bathtub, and must also wear loafers because he cannot bend to tie his shoes. (Tr. 49).

The medical evidence of record shows that plaintiff has undergone back surgery on two separate occasions. In September of 1976, plaintiff was hospitalized for a ruptured disc, and a lumbar laminectomy[3] was performed. (Tr. 113–126). Plaintiff underwent a second laminectomy in Octo-ber of 1977. A posterolateral fusion was also performed at that time. (Tr. 132–142). A series of medical reports submitted by Dr. Francis D. Fowler, plaintiff's treating orthopedist (Tr. 152), and Dr. Guy W. Gargour, plaintiff's treating neurologist (Tr. 159), trace the progress which plaintiff made following his operations.[4]

Dr. Fowler reported on December 12, 1977 that plaintiff's "overall picture" was "satisfactory," but that plaintiff was unable to perform normal work duties. (Tr. 143). Prolonged standing, walking or lifting of heavy objects was contraindicated. On February 27, 1978, Dr. Fowler reported that plaintiff's fusion was healing well. Nonetheless, the doctor believed that plaintiff would be "unable to return to any type of duties before August 1978." (Tr. 145). In a letter dated July 18, 1978, Dr. Fowler stated:

> It is my opinion that ... [plaintiff] should be allowed to return to work at a program of work which does not require extensive lifting. He is very capable of maintaining himself at a sitting position at a desk or the like. He may walk from one room to the other. He may lift objects not weighing more than ten pounds.

(Tr. 156). Dr. Fowler indicated on August 24, 1978 that plaintiff was still experiencing pain and tightness in his back. (Tr. 147, 165). It was noted, however, that plaintiff had become "more active with walking and with activities about the house." (Tr. 147).

In November of 1978, plaintiff demonstrated positive straight leg raising at about forty degrees. (Tr. 165). Range of motion in the lower back was also significantly restricted. Dr. Fowler commented:

> It is apparent to this examiner that at this time this man is not able to continue at his usual work for the school board and should be retired on a disability retirement. He is not at this time able to seek out vocational rehabilitation counseling because of his continued complaints.

3. A "laminectomy" is a surgical procedure by which the posterior arch of a vertebra is excised. *Dorland's Illustrated Medical Dictionary* (25th ed. 1974).

4. The reports of Dr. Fowler and Dr. Gargour constitute the entire body of medical evidence relied upon by the Secretary in terminating plaintiff's disability insurance benefits.

(Tr. 165). On January 9, 1979, the doctor indicated that plaintiff's fusion was solidly healed, but that muscle spasms were present, range of motion was still significantly restricted, and plaintiff's spine had lost, to a certain degree, "the usual lumbar lordotic curve." (Tr. 150). In March of 1979, it was noted that plaintiff hoped to pursue vocational rehabilitation notwithstanding his significant positive findings and the doctor's prior recommendation not to go forward with vocational retraining. (Tr. 153–154). Dr. Fowler stated on October 18, 1979 that plaintiff "continued to be disabled and demonstrates a restricted range of motion to the back." (Tr. 166). No specific therapy or care was required except that plaintiff was advised to wear his back brace regularly. Finally, the doctor reported on February 20, 1980 that plaintiff continued to have significant limitation of motion in his lower back. (Tr. 179). Straight leg raising was positive at twenty degrees. Plaintiff was unable to flex his trunk or sit comfortably. Therefore, Dr. Fowler opined that plaintiff was "unable to perform any gainful employment because of the continuing limitation of motion to the back and the continuing pain in the back." (Tr. 179).

Dr. Gargour evaluated plaintiff's back impairment from a neurological perspective. On February 23, 1978, Dr. Gargour reported that plaintiff's fusion was healing well. (Tr. 108–109). The doctor's prognosis at that time was that plaintiff should be able to return to his job as a bus driver, but that a job which did not involve prolonged periods of sitting would be more advisable. In October of 1978, Dr. Gargour reported that plaintiff was experiencing incapacitating pain and swelling in the left side of his back. (Tr. 149). The doctor ascribed a thirty percent permanent partial disability to plaintiff's back and stated that further medical treatment would probably not improve plaintiff's condition. On May 29, 1979, Dr. Gargour indicated that plaintiff was "comfortable in a totally sedentary activity." (Tr. 158). The doctor explained, however, that plaintiff had the propensity to have muscle spasms and to be incapacitated; plaintiff's recovery from his surgery was described as less than satisfactory. Dr. Gargour opined that plaintiff was permanently and totally disabled. Finally, Dr. Gargour submitted a report dated February 26, 1980. This report is not contained in the transcript but is included in the court file. It was considered by the Appeals Council on May 2, 1980. (Tr. 3). In this report, Dr. Gargour stated that plaintiff "has a very significant back disorder that is painful in a constant and disabling way and that he will never be able to engage in any gainful employment." *See* Exhibit Attached to Plaintiff's Motion to Modify the Record, filed November 26, 1980. Dr. Gargour concurred with Dr. Fowler that vocational rehabilitation would not be tolerable by the plaintiff.

Based on plaintiff's testimony and the reports submitted by Doctors Fowler and Gargour, the Secretary found that plaintiff regained the residual functional capacity to perform "appropriate" sedentary work in January of 1979. (Tr. 14–15). The function of this Court on review is not to try plaintiff's claim *de novo*, but rather to leave the findings of fact to the Secretary of Health and Human Services and to determine upon the whole record whether the Secretary's decision is supported by substantial evidence. *King v. Califano,* 599 F.2d 597 (4th Cir. 1979); *Teague v. Califano,* 560 F.2d 615 (4th Cir. 1977). Substantial evidence is more than a scintilla but less than a preponderance of the evidence presented. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir. 1966). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and must be sufficient to justify a refusal to direct a verdict were the case before a jury. *Teague v. Califano, supra; Johnson v. Califano,* 434 F.Supp. 302 (D.Md.1977). Furthermore, it is well settled that if there is substantial evidence to support the decision of the Secretary, then that decision must be upheld. *Jolley v. Weinberger,* 537 F.2d 1179 (4th Cir. 1976); *Blalock v. Richardson,* 483 F.2d 773 (4th Cir. 1972). It should be noted, however, that the Court is not to

blindly affirm the Secretary's decision, but must instead scrutinize the entire record to determine if plaintiff's claim has been fairly evaluated and the law has been correctly applied. *Hicks v. Gardner*, 393 F.2d 299 (4th Cir. 1968); *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975).

The Court is of the opinion that substantial evidence *does not* exist in the instant case to support the Secretary's decision. As was outlined in *Blalock v. Richardson, supra* at page 776:

> There are four elements of proof to be weighed in determining whether there is substantial evidence to support the Secretary's decision: (1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age.

This Court must therefore review the Secretary's decision to see if these four elements were fully and fairly considered.

The ALJ stated in his decision that Dr. Gargour opined in February of 1978 that plaintiff could possibly return to his job as a bus driver, but that a job which did not entail prolonged sitting would be less of a strain on plaintiff's back. (Tr. 13). While it is true that Dr. Gargour made this prognosis in February of 1978, approximately four months after plaintiff had undergone back surgery and spinal fusion, it is also true that Dr. Gargour subsequently amended his opinion. In October of 1978, Dr. Gargour stated that plaintiff was experiencing "incapacitating pain and swelling in the left side of his back." (Tr. 149). On May 29, 1979, the doctor described plaintiff's back impairment as permanent and totally disabling. (Tr. 158). Finally, in Dr.

Gargour's most recent report, which was considered by the Appeals Council on May 2, 1980 (Tr. 3), the doctor indicated that plaintiff "has a very significant back disorder that is painful in a constant and disabling way and that he will never be able to engage in any gainful employment." *See* Exhibit Attached to Plaintiff's Motion to Modify the Record, filed November 26, 1980. Therefore, the opinion expressed in Dr. Gargour's more recent reports clearly buttresses plaintiff's claim of continuing disability, and cannot be said to support the Secretary's finding that plaintiff regained the functional capacity to perform sedentary work in January of 1979.

Similarly, while the record shows that in July of 1978 Dr. Fowler believed that plaintiff "should be" capable of performing sedentary labor (Tr. 156), several updated reports submitted by Dr. Fowler indicate a contrary conclusion. For instance, in November of 1978, the doctor opined that plaintiff should receive disability retirement from the school board because he was unable to work. (Tr. 165). On February 20, 1980, Dr. Fowler stated unequivocally that plaintiff was "unable to perform any gainful employment because of the continuing limitation of motion to the back and the continuing pain in the back." (Tr. 179).

In short, both Dr. Fowler and Dr. Gargour expressed the opinion that plaintiff continues to be disabled from performing any form of work. This fact is significant for two reasons—both Dr. Fowler and Dr. Gargour are plaintiff's treating physicians, and their opinions are uncontradicted by other qualified medical experts. Thus, the opinions of these physicians, though not conclusive, must be given great weight.[5] *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Oppenheim v. Finch*, 495 F.2d 396 (4th Cir. 1974).

With regard to the objective medical evidence, the Secretary found that:

---

5. In finding that plaintiff could perform sedentary labor, the Secretary relied on the fact that Dr. Gargour and Dr. Fowler had both recommended vocational rehabilitation. (Tr. 14, 158, 178). What the Secretary did not point out is that Dr. Fowler and Dr. Gargour subsequently advised that plaintiff should not engage in vocational rehabilitation due to the severity of his back impairment. (Tr. 179 and Exhibit Attached to Plaintiff's Motion to Modify the Record, filed November 26, 1980). Therefore, the Court is convinced that the bona fide opinion of these physicians is that plaintiff cannot perform any type of work activity.

the objective medical evidence comprising [Dr. Fowler's] . . . office notes indicates generally that claimant can return to some appropriate work as of January 16, 1979 but cannot return to his past work which required extensive standing (in the liquor store job) or lengthy sitting (in the bus driver job).

(Tr. 13). It is difficult to discern exactly what objective findings the Secretary relied on to support this conclusion. Dr. Fowler's office notes reveal that on November 16, 1978 plaintiff had lost, to a certain degree, the usual lumbar lordotic curve in his spine. (Tr. 165). In addition, motion of the lower back was significantly restricted. Straight leg raising was positive at forty degrees. On January 16, 1979, Dr. Fowler reported that plaintiff continued to present "significant positive findings." (Tr. 165). On May 8, 1979, plaintiff "demonstrated very limited motion to the lower back" when flexing his trunk. (Tr. 166). Dr. Gargour has also found range of motion in plaintiff's back to be very limited, and has noted the presence of muscle spasms on several occasions. (Tr. 149, 158). Therefore, the Court is convinced that the objective medical findings relied upon by the Secretary do not constitute substantial evidence in support of the decision that plaintiff regained the capacity to work in January of 1979.

■ Plaintiff in the instant case complained of severe and incapacitating pain. (Tr. 53–54). Dr. Gargour corroborated plaintiff's complaints of pain by reporting that plaintiff experiences severe muscle spasms. (Tr. 149, 158). The ALJ and the Appeals Council, however, did not consider plaintiff's subjective complaints of pain. The ALJ merely stated that plaintiff's impairments were "post status laminectomy and fusion with subsequent history of pain and limitation in motion as well as limitations in standing, sitting, and walking." (Tr. 14). The Appeals Council's decisions are completely devoid of any reference to plaintiff's subjective complaints of pain.

(Tr. 3–5). The Court is of the opinion that this failure to consider plaintiff's subjective complaints cannot be upheld, especially in light of the well-settled rule that pain alone can form the basis for a finding of disability. *Thorne v. Weinberger,* 530 F.2d 580 (4th Cir. 1976); *Johnson v. Califano, supra.*

■ Finally, with respect to plaintiff's educational background, work history, and age at the time of the administrative hearing (i. e., "his vocational factors"), the ALJ found that plaintiff was forty-two years of age, had a high school education, had performed semi-skilled work as a bus driver and liquor store manager, and had obtained work skills that would be transferrable to sedentary labor. (Tr. 14–15). The ALJ then applied 20 C.F.R. § 404.1513 and Rule 201.26, Table No. 1 of Appendix 2, Subpart P, Regulation No. 4 (1980), which directed a finding that plaintiff was not disabled.[6] The Court finds that it was error for the ALJ to rely solely on the "grid regulations," as 20 C.F.R. § 404.1513 *et seq.* are commonly called, to demonstrate that plaintiff was physically and vocationally capable of performing labor other than his past work. According to the Secretary's own mandate, the grid regulations are not to be deemed controlling when it is found that an individual cannot perform a full range of sedentary labor. 20 C.F.R. § 404.1505(b); Rule 200.00 and 201.00(h), Appendix 2, Subpart P, Regulation No. 4. The ALJ in the instant case explicitly stated that plaintiff *could not* perform a job which required lengthy sitting. (Tr. 13). However, sedentary labor, by definition, is primarily performed while sitting. 20 C.F.R. § 404.-1510(b). It is reasonable to assume that there may be a substantial number of sedentary jobs which plaintiff could not perform due to the length of time that he would be required to sit. The ALJ implied as much when finding that plaintiff "had the residual functional capacity to do *appropriate* sedentary work in January 1979."

---

6. The ALJ actually applied the wrong rule since Rule 201.26 applies to individuals with less than a high school education. The rule which should have been applied was Rule 201.29, Table 1 of Appendix 2, Subpart P, Regulation No. 4 (1980). This error, taken by itself, is harmless because Rule 201.29 also directs a finding of non-disability.

(Tr. 14) (emphasis supplied). Consequently, plaintiff is probably not able to perform a full range of sedentary labor, and vocational expert testimony was necessary to establish that sedentary jobs exist which plaintiff could in fact tolerate. To allow an ALJ to determine that a plaintiff can perform "appropriate" sedentary labor assumes that such "appropriate" sedentary jobs exist in the national economy, and thus "vest[s] the administrative law judges with the vocational expertise that numerous cases have held they do not possess." *Phillips v. Harris*, 488 F.Supp. 1161, 1168 (W.D.Va.1980). This Court will not endorse such an approach.

For the aforementioned reasons, it is the opinion of this Court that the Secretary's decision to terminate plaintiff's disability insurance benefits was not based on substantial evidence. Therefore, a separate Order will be entered granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment.