**Daniel STEFFANICK**

v.

**Margaret M. HECKLER,[1] Secretary, Department of Health and Human Services.**

**Civ. A. No. M–81–3232.**

United States District Court,
D. Maryland.

Aug. 18, 1983.

---

1. Margaret M. Heckler succeeded to the office of Secretary on March 9, 1983, and has been substituted as the defendant. Rule 25(d)(1), Fed.R.Civ.P.

Gordon S. Berman, Baltimore, Md., for plaintiff.

J. Frederick Motz, U.S. Atty. for Maryland, and Glenda G. Gordon, Asst. U.S. Atty., Donald A. Gonya, Asst. Gen. Counsel, and Randolph W. Gaines, Deputy Asst. Gen. Counsel, Social Security Division, Dept. of Health and Human Services, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, Daniel Steffanick, brought this action to obtain judicial review of a final decision of the Secretary of Health and Human Services (Secretary) denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 405(g).

The plaintiff first filed an application for disability benefits on March 14, 1979, alleging that he became unable to work on June 27, 1978 (Tr. 49–52). This application was denied (Tr. 53–54), and plaintiff did not appeal the decision. A second application for disability was filed on September 10, 1980 (Tr. 55–58), and this claim was again denied, initially and upon reconsideration (Tr. 59–63).

A hearing was held before an Administrative Law Judge (ALJ) on July 14, 1981, at which the plaintiff testified and was represented by counsel (Tr. 26–48). The ALJ issued a decision on September 25, 1981, recommending that disability benefits be denied (Tr. 7–18). The ALJ found that plaintiff was not prevented from engaging in any substantial gainful activity for any continuous period which had lasted or could be expected to last for at least 12 months (Tr. 17, Finding # 6). The ALJ also found

that plaintiff was able to perform his previous work activities as an estimator (Tr. 17, Finding # 7). The ALJ's decision was upheld by the Appeals Council on November 20, 1981, and became the final decision of the Secretary (Tr. 3–4).

This case is before the court on cross-motions for summary judgment.[2] Having considered the administrative record and the parties' memoranda, the court concludes that no hearing is necessary. Local Rule 6(E).

## I. *Summary of the Evidence*

The plaintiff was born on December 29, 1927 (Tr. 27), and is now 54 years old. He has an eighth grade education (Tr. 29). From 1960 to 1975, plaintiff worked as a construction supervisor (Tr. 29). This job required him to direct the measurement and layouts of bridges and highways (Tr. 84). It entailed walking and standing for four hours and sitting for four hours, with occasional bending and reaching required (Tr. 69). From 1977 until June 27, 1978, plaintiff worked as a preparer of cost estimates for construction projects (Tr. 69). Plaintiff stopped working on June 27, 1978 due to his various medical problems and has not been employed since (Tr. 29–30, 38). Plaintiff alleges a disability due to arteriosclerotic cardiovascular disease with angina, lumbar and cervical disc disease, hypertension resulting in renal arterial stenosis, and depression.

The plaintiff's first operation was performed at Johns Hopkins Hospital in April, 1967 to repair a ruptured intervertebral disc, L4–L5 (Tr. 225, 265). In November, 1972, at Sinai Hospital, plaintiff had his gall bladder removed and a hiatus hernia repaired (Tr. 96, 225, 265). In January, 1974, a second operation to repair plaintiff's ruptured lumbar disc was performed (Tr. 37, 262, 265). The Workmen's Compensation Commission determined that plaintiff was totally disabled from January 1974 to December 1975 as the result of an on the job accident.

Continuing back trouble led plaintiff to a course of pelvic traction at Sinai Hospital in June, 1975 (Tr. 251, 265). When this treatment proved unsatisfactory, plaintiff was referred to Dr. Jerome Reichmister, a specialist in orthopedic surgery (Tr. 218–219). In August, 1975, plaintiff underwent a lumbar spine discectomy and fusion, L4–L5 (Tr. 96, 105, 251, 265).

In April, 1976, plaintiff was admitted to the Greater Baltimore Medical Center (G.B.M.C.) for treatment of acute hemorrhaging in the lung. Plaintiff was discharged in April, 1976 with a diagnosis of hemoptysis, resolved, chronic essential hypertension and depressive neurosis (Tr. 111, 265). In October of the same year, plaintiff was readmitted to G.B.M.C. with acute hypertension and renal artery stenosis (Tr. 141–142, 162, 265). He was treated with medication and released (Tr. 141–142). One month later, he returned to G.B.M.C. for bypass surgery to relieve a left kidney obstruction (Tr. 169, 173).

Plaintiff was hospitalized twice in 1977 at St. Joseph's Hospital for depressive neurosis and alcoholism (Tr. 254, 265). He was treated with psychotherapy and valium and showed gradual improvement in his mood (Tr. 255).

In January, 1978, plaintiff was admitted to G.B.M.C. complaining of chest pains (Tr. 186–217, 265). Plaintiff's condition was diagnosed as hypertensive cardiovascular disease and unstable angina pectoris (Tr. 187). He was treated with Inderol and Nitroglycerin and discharged on January 26, 1978 in an improved condition (Tr. 186–187).

In January, 1979, plaintiff was examined by Dr. Reichmister for recurring back pain. Dr. Reichmister, noting plaintiff's "multiple physical problems," recommended that plaintiff be "retrained for a light type of job where he will not have to do any heavy lifting." Dr. Reichmister also noted that if plaintiff "cannot be retrained for another job, then I see no other choice but to put him on permanent disability" (Tr. 218).

2. Paper Nos. 7 and 9.

From July, 1978 to March, 1979, plaintiff was treated by Dr. Dennis Caralis, an internist in cardiology. Dr. Caralis diagnosed plaintiff's condition as ischemic heart disease, with pain produced by moderate exertion and cervical disc herniation (Tr. 220).

Dr. Neal Aronson, a neurosurgeon and plaintiff's treating physician for a number of years (Tr. 262), examined plaintiff for continuing pain in the back and neck. At this time, Dr. Aronson found "marked disc degeneration at C5–6 with rather severe foraminal constriction on the left side particularly" and "mild disc degeneration at C6–7." Dr. Aronson noted that the problem "looks rather chronic" and concluded that plaintiff was a possible candidate for another discectomy and fusion operation (Tr. 223).

In May, 1979, plaintiff was examined by Dr. Lawrence F. Awalt, a specialist in cardiovascular disease. At this time, plaintiff's electrocardiogram was normal, but Dr. Awalt was unable to get plaintiff to perform the stress test because the doctor was skeptical that plaintiff could perform adequately on a treadmill (Tr. 224–227). Dr. Awalt also noted plaintiff's lumbar and cervical disc disease (Tr. 226).

In July, 1980, plaintiff returned to Dr. Aronson for a follow-up examination. Plaintiff continued to complain of disabling pain in the neck and lower back, as well as the right forearm. Plaintiff was taking Percodan for the pain. In a letter dated July 16, 1980, Dr. Aronson stated: "I think he is probably a candidate for social security and I intend to support him in his application for same." (Tr. 236).

Plaintiff was examined in August, 1980 by Dr. Rolando Vieta, a specialist in internal medicine. In his report, Dr. Vieta concluded that plaintiff suffers from polymylalgia rheumatica and degenerative arthritis but was unable to state plaintiff's long term limitations (Tr. 238–239).

A consultative examination was performed on plaintiff at the request of the Social Security Administration on November 15, 1980 by Dr. Swadish Bhatiani, a specialist in internal medicine. At that time, plaintiff's kidney functions were good and the electrocardiogram and blood pressure were normal (Tr. 242). A bicycle stress test was performed in which plaintiff performed poorly due to obesity, sedentary habits, and low back pain. However, the test itself was normal (Tr. 242). Plaintiff was unable at this time to perform the treadmill stress test because of the level of exertion required (Tr. 242). Dr. Bhatiani concluded that "on the basis of the history, examination, and lab data, it appears that the patient is unable to do his routine work" (Tr. 243).

Plaintiff was examined by Dr. George Ramapuram in January, 1981. An exercise stress test revealed the presence of myocardial ischemia at a very low work level, but the test had to be terminated because of plaintiff's increasing chest pains. Dr. Ramapuram's final diagnosis was of coronary disease and a complimentary emotional overlay (Tr. 261).

A follow-up neurosurgical examination was performed by Dr. Aronson on March 3, 1981. Dr. Aronson stated that plaintiff's "cervical range of motion is reduced and extension quite painful." Dr. Aronson concluded that "this patient is permanently and totally disabled and is a candidate for social security" (Tr. 262).

Finally, plaintiff was admitted to the Veteran's Administration Hospital in April, 1981 for complaints of stomach pains (Tr. 263). A sigmoidoscopy and rectal polypectomy were performed and plaintiff was discharged with improved but not totally resolved symptomology (Tr. 264).

At the administrative hearing held on July 14, 1981, plaintiff testified that he had pains in his back, neck, legs and arms (Tr. 30, 39, 40). He stated that the pains in his back, neck and arm are continuous; the taking of Percodan relieves the pain temporarily, but makes him light-headed (Tr. 32, 43). Plaintiff stated that these pains prevent him and have prevented him since June of 1978 from seeking employment. He testified that he didn't think he could

apply himself to working "with all those pains" (Tr. 39).

The plaintiff stated he could sit for a half an hour to forty-five minutes at a time and stand for approximately the same period before needing to rest (Tr. 32). He testified he could walk two to three blocks at a time (Tr. 33), and lift ten to fifteen pounds (Tr. 32). Plaintiff's day is usually spent watching television and reading, with occasional visits with friends (Tr. 34).

Plaintiff testified he could care for his own needs; he can dress and bathe himself (Tr. 33), shop for groceries (Tr. 43), prepare his meals and wash the dishes (Tr. 83). He stated that his sister helped with the heavier housework (Tr. 77, 83).

## II. Discussion

The issue before this court is whether the Secretary's decision to deny the plaintiff's application for disability insurance benefits is supported by substantial evidence. 42 U.S.C. § 405(g). See Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). In making such a determination, the court must "closely scrutinize the entire record." Kesling v. Secretary of H.H.S., 491 F.Supp. 569, 592 (N.D. W.Va.1980), to ensure that the Secretary, or his delegate the ALJ, has applied the correct legal standards, Myers v. Califano, 611 F.2d 980, 982 (4th Cir.1980), and has reached his conclusions based on adequate evidence. Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir.1979).

As this court noted recently in Wander v. Schweiker, 523 F.Supp. 1086 (D.Md.1981):

"It is well settled in this Circuit that the claimant bears the initial burden to establish (1) the existence of a medically determinable physical or mental impairment, and (2) that the impairment renders the claimant incapable of engaging in his usual line of work. See, e.g., Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981). Once the claimant makes such a showing, the burden shifts to the Secretary to go 'forward with substantial evidence to establish that [the] claimant ha[s] sufficient residual capacity to en-

gage in a specific job which exists in the national economy.' Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir.1980). See Western v. Harris, 633 F.2d 1204, 1206 (5th Cir.1981).

The showing required by the Secretary has two principal components. The Secretary must first establish that the claimant's impairments do not preclude certain types of activity necessary for other occupations, and that the claimant's prior work experience involves skills transferable to other types of work. The Secretary must then show the existence in the national economy of specific types of jobs suitable for the claimant in light of her skills and physical or mental capabilities. 42 U.S.C. § 423(d)(2)(A). See, e.g., Decker v. Harris, 647 F.2d 291, 294 (2d Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir.1976)."

523 F.Supp. at 1092.

In 1979, the Social Security Administration adopted a detailed set of regulations that give the Secretary a guideline by which to evaluate an individual's claim for disability. 20 C.F.R. Part 404, Subpart P and Apps. 1 and 2 (1981). Two of the more significant aspects of the regulations are: (1) a sequential analysis of an applicant's claim, 20 C.F.R. § 404.1520 (1980); and (2) the authority to notice administratively the existence of jobs in the national economy, and to deny or award benefits by comparing the applicant's age, educational level and skill experience with certain medical-vocational guidelines. Compare Roberts v. Schweiker, 667 F.2d 1143 (4th Cir.1981) and Hall v. Harris, 658 F.2d 260 (4th Cir.1981), with Frady v. Harris, 646 F.2d 143 (4th Cir.1981).

The ALJ's basis for denying plaintiff's claim was made with reference to the second step of the sequential analysis. That step requires a denial of a disability claim if no severe impairment is found. 20 C.F.R. § 404.1520(c) (1981). See Phillips v. Harris, 488 F.Supp. 1161, 1164 (W.D.Va. 1980). The ALJ in the present case found that the evidence of record did not establish that claimant's medical conditions met or

equaled the level of severity described in the Listing of Impairments in the Appendix to Regulations No. 4, Subpart P of the Social Security Act (Tr. 17, Finding # 4).

The regulation relating to the severity of an impairment states as follows:

"(a) *Non-severe impairment.* An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting."

20 C.F.R. § 404.1521 (1981).

The ALJ was of the opinion that the plaintiff has not been prevented from performing his previous estimator work activity; and that plaintiff retains the residual functional capacity to perform sedentary work as defined by Section 404.1567 of Regulations No. 4 of the Social Security Act (Tr. 17, Finding # 6).

The ALJ based his conclusion that plaintiff's impairments were not severe on three underlying findings: (1) the record contains minimal objective evidence of any current severe pathology (Tr. 16), (2) the plaintiff's demeanor and testimony at the hearing reflected that he would be able to do sedentary work activity (Tr. 16), and (3) the plaintiff's admission that he could perform tasks (Tr. 32) consistent with the ability to do sedentary work as defined. 20 C.F.R. § 404.1567(a).

As to the first finding of a lack of objective evidence of a current severe pathology,

the ALJ, by his own admission, discounted the opinion of several of plaintiff's treating physicians who asserted that plaintiff was disabled (Tr. 16). The ALJ stated that "although a doctor's opinion that an individual is disabled is entitled to weight and is considered evidence as to the existence of medical problems, it is the function of the Administrative Law Judge, however, to make the final determination as to whether the claimant is disabled within the meaning of the Social Security Act, after a thorough evaluation of all the evidence of record." (Tr. 16).

■ One of the functions of an ALJ is to weigh and resolve conflicting medical evidence where conflict exists in the record. *See, e.g., Moss v. Gardner,* 411 F.2d 1195, 1195 (4th Cir.1969); *Celani v. Weinberger,* 393 F.Supp. 804, 810 (D.Md.1975). In this case, however, no such conflict of medical authority exists. The ALJ's opinion that plaintiff would be able to perform his previous work activity is directly contrary to the opinions of several physicians who examined the plaintiff. In reaching his decision, the ALJ clearly discounted the unrebutted opinions of Dr. Aronson ("It is our feeling that this patient is permanently and totally disabled and is a candidate for social security (Tr. 262)), Dr. Bhatiani ("On the basis of the history, examination and the lab data, it appears that the patient is disabled to do his routine work" (Tr. 243)), and Dr. Reichmister ("If [claimant] cannot be retrained for another job, then I see no other choice but to put him on permanent disability" (Tr. 218)).

The finding of the ALJ is erroneous. It is not the role of the ALJ to speculate as to the seriousness of a claimant's medical condition. *See, e.g., Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981); *Lund v. Weinberger,* 520 F.2d 782, 785 (8th Cir.1975). *Cf. Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir.1980) (ALJ may not take administrative notice based on his own knowledge). It is well settled that the opinion of a treating physician is entitled to special consideration and is not to be disregarded lightly in the absence of competent conflicting evidence.

*Wander v. Schweiker,* 523 F.Supp. 1086, 1095 (D.Md.1981). *See also Stawls v. Califano,* 596 F.2d 1209, 1213 (4th Cir.1979); *Oppenheim v. Finch,* 495 F.2d 396, 398 (4th Cir.1974); *Vitek v. Finch,* 438 F.2d 1157, 1160 (4th Cir.1971); *Proctor v. Schweiker,* 526 F.Supp. 70, 74 (D.Md.1981).

■ The Fourth Circuit has stated that "even if legitimate reasons exist for rejecting or discounting certain evidence, the Secretary cannot do so for no reason or for the wrong reason." *King v. Califano,* 615 F.2d 1018, 1020 (4th Cir.1980). The ALJ must state explicitly the weight attached to each medical report and why these reports were discounted. *See Myers v. Califano,* 611 F.2d 980, 983 (4th Cir.1980). In this case the ALJ has given no reason why the medical reports of plaintiff's treating physicians were discounted.

Since there was no medical evidence directly contradicting plaintiff's allegations of disability and such allegations are supported by clinical findings and are consistent with unrebutted testimony, the court concludes that the ALJ failed to give the medical opinion testimony appropriate weight. *See generally Wander v. Schweiker,* 523 F.Supp. at 1094–95, *Higginbotham v. Califano,* 617 F.2d 1058, 1059–60 (4th Cir.1980).

■ The ALJ's second finding that plaintiff's demeanor and testimony reflected that he would be able to do sedentary work activity, including his prior estimator work activity, cannot be sustained. The ALJ found that plaintiff's allegations of severe incapacitating pain in his back and neck were incredible because of the medical evidence of record and plaintiff's appearance at the hearing (Tr. 17). This conclusion is unsupportable.

The objective medical evidence establishes that the plaintiff has multiple physical problems: a history of musculoskeletal problems, a cardiac disorder, stomach pains, kidney and lung problems, and psychiatric problems. The pain resulting from these medically determinable impairments may itself be disabling. *See, e.g., Higginbotham*

*v. Califano,* 617 F.2d 1058, 1059 (4th Cir. 1980); *Thorne v. Weinberger,* 530 F.2d 580, 582–83 (4th Cir.1976). Pain may entitle one to disability benefits even though there is no objective medical evidence substantiating the pain itself, as compared with the underlying impairment. *See, e.g., Brandon v. Gardner,* 377 F.2d 488, 490 (4th Cir.1967); *Bryant v. Harris,* 494 F.Supp. 932, 935 (D.S. C.1980).

■ The ALJ stated that plaintiff's allegations of pain were incredible because at the hearing, plaintiff showed no signs of distress or pain. The ALJ noted as follows:

"At the hearing the claimant's demeanor was not consistent with the presence of any incapacitating physical or mental disorder. The claimant ambulated well. He remained comfortable in the seated position throughout the hearing and manifested no obvious impairment of his torso or upper extremities. Limb movements were free and there was no guarding. The claimant responded to questions in an intelligent, logical, relevant and coherent manner. He did not appear preoccupied with any pain."

(Tr. 10–11). However, an ALJ's observation that a claimant did not appear to be in pain while testifying is entitled to "little or no weight and, standing alone, cannot be substantial evidence in support of the Secretary's decision." *Lewis v. Weinberger,* 541 F.2d 417, 421 (4th Cir.1976). *See Tyler v. Weinberger,* 409 F.Supp. 776 (E.D.Va. 1976).

■ One of the functions of the ALJ is to evaluate a plaintiff's subjective complaints and weigh his credibility. *See McMillen v. Secretary of Health and Human Services,* 491 F.Supp. 84, 87 (N.D.W.Va.1980); *Locklear v. Mathews,* 424 F.Supp. 639, 647 (D.Md.1976). It is inappropriate, however, for the ALJ to judge a claimant by reference to some "Sit and Squirm index." *Wander v. Schweiker,* 523 F.Supp. 1086, 1094 (D.Md.1981), *quoting Tyler v. Weinberger,* 409 F.Supp. 776, 789 (E.D.Va.1976).

■ In this case, plaintiff's allegations regarding pain and an inability to engage in

substantial work activity are not unsubstantiated. *Cf. Ballowe v. Harris,* 650 F.2d 130, 133 (8th Cir.1981) (claimant's allegations of pain unsupported by and contrary to substantial medical evidence); *Halsey v. Richardson,* 441 F.2d 1230, 1236 (6th Cir. 1971) (conflicting medical and other evidence as to subjective complaints). There was direct medical evidence in this case consistent with plaintiff's subjective complaints. Furthermore, the need for major surgical procedures is also evidence of significant pain. *Wander v. Schweiker,* 523 F.Supp. at 1094. When, as here, a claimant has a substantial work record, his testimony as to pain should not be disregarded lightly. *See, e.g., Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979); *Vitek v. Finch,* 438 F.2d 1157, 1159; *Nanny v. Mathews,* 423 F.Supp. 548, 551 (E.D.Va.1976).

The court concludes, therefore, that the ALJ erred in effectively disregarding all of the plaintiff's uncontradicted evidence on the basis of his limited observations at the supplemental hearing.

▌ Finally, the ALJ relied on the plaintiff's own admissions of his physical abilities, *including his statements that he could sit or stand for forty-five minutes,* to conclude that he could perform sedentary work. The ALJ did not consider, however, the plaintiff's statement that he could *only* sit for that long. "I got to keep relieving myself by getting up or sitting down." (Tr. 32). The definition of sedentary, 20 C.F.R. § 404.1567(a), contemplates the ability to remain sedentary for substantial periods of time with occasional lifting. It does not contemplate having to stand to relieve the pain from sitting, but contemplates standing occasionally to perform necessary work-related tasks. The admission of the plain-

tiff does not place him within the category of people who can perform sedentary work.

For the reasons set out above, the court concludes that the Secretary's finding that the plaintiff does not suffer from a severe impairment is unsupported by substantial evidence.[3]

Accordingly, it is this 18th day of August, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. The Secretary's motion for summary judgment is DENIED.

2. The plaintiff's motion for summary judgment is GRANTED, and the Secretary is directed to award the plaintiff disability insurance benefits as prayed in his application.

3. The Clerk shall forward a copy of this Memorandum and Order to counsel for the parties.

---

3. The plaintiff seeks to introduce on remand additional medical evidence of his condition. He claims that he required further treatment for pain and a coronary bypass operation, both of which occurred within six months of the ALJ's decision. This new evidence would be admissible only to the extent it is material to plaintiff's condition as it existed at the time of the ALJ's determination. *See King v. Califano,* 599 F.2d 597, 599 (4th Cir.1979); *cf. Zielinski v.*

*Califano,* 580 F.2d 103 (3d Cir.1978) (case remanded because autopsy finding of "black lung" and absence of subsequent mining work tended to show black lung at the time benefits denied). In light of the court's conclusion, however, that the evidence of record showed conclusively that the plaintiff met the standard for establishing a disability which prevented him from performing work existing in the national economy, this evidence is superfluous.