**Kent HOGAN, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 81–K–1692.

United States District Court, D. Colorado.

Feb. 9, 1982.

---

* See, also, *Aarnes v. Merck & Co.*, 532 F.Supp. 148 (D.N.J., 1980), aff'd CA–3, *sub. nom. King v. Merck & Co.*, CA–3, No. 80–2296, 10/14/81.

Susan E. Perry, Colorado Legal Services, Inc., Denver, Colo., for plaintiff.

Janis Chapman, Asst. U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is an action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Secretary of Health and Human Services ("secretary"), denying Title II social security disability benefits to the plaintiff under 42 U.S.C. § 423(a). The claimant-plaintiff, Hogan, is 40 years old and has worked since his youth in unskilled jobs including newspaper boy, grocery stacker, factory worker, truck driver and cement finisher. He has a second grade education and he last worked as a cement finisher. In 1979, Hogan fell through a hole in the floor on his job and suffered trauma to the left thoracic region and tailbone and suffered a fracture of the ninth left rib. As a result of this accident, Hogan suffered spasms in his lumbar muscles and severe pain in the lower back, left thigh and groin.

Hogan initially applied for disability benefits in April, 1980 and was rejected in June, 1980. He filed a request for reconsideration in August, 1980 which the secretary denied in September, 1980. Hogan then filed a request for a hearing with the secretary in October, 1980. After a hearing in March, 1981, the administrative law judge ("ALJ"), determined that Hogan was not disabled. In July, 1981, the appeals council affirmed the ALJ's decision.

For the reasons expressed in this opinion, the secretary's decision is vacated and the case remanded to the secretary for consideration of additional evidence as enumerated.

## I. MEDICAL EVIDENCE

Dr. Elmer Franz, an orthopedist, examined Hogan on several occasions. Dr. Franz noted that while there was some actual flattening of Hogan's lumbar spine, sensory tests revealed that his severe pain might be "functional and not due to any specific nerve root irritation". Dr. Franz initially prescribed an anti-inflammatory medication, butazolidin, and recommended that if Hogan's pain did not improve he should receive physical therapy and traction. Dr. Franz initially stated that Hogan was not able to work,[1] even though he found that Hogan appeared sincere in stating that he wanted to work. (Tr.130, Ex. 18). Dr. Franz noted that Hogan tried working for four and one half days on his old job but he had to stop due to pain in his back, lumbosacral area and groin. (Tr.141, Ex. 20). However, Dr. Franz also believed that Hogan's severe pain "is on a hysterical basis and is not primarily organic", (Tr. 143, Ex. 21), and that Hogan might be able to pursue some other gainful employment with rehabilitation in lighter work. (Tr. 159–62, Ex. 24).

Dr. William Warmath, a neurological surgeon, also examined Hogan on several occasions. Dr. Warmath observed that Hogan had limitation of back motion due to pain and "give-way" weakness in all muscle groups in the lower left extremities. Dr. Warmath initially recommended conservative treatment and then physical therapy and a back brace if Hogan did not respond. (Tr. 134, Ex. 19). Dr. Warmath stated on several occasions that he did not feel that Hogan could return to his former work or perform manual labor generally but he felt that with some rehabilitation, Hogan could do work which does not entail lifting, or prolonged walking. (Tr. 159–162, Ex. 24).

Hogan's most recent medical exam was by Dr. H.F. Stolowski, an osteopathic physician and surgeon, on March 23, 1981. Dr. Stolowski observed that Hogan:

"has become progressively worse creating an increasing disability with the following pathologic findings:

1. Multiple joint pain (Structural and skeletal exam)

2. Limitation of motion, dorsal lumbosacral spine the ranges of all motion

---

1. A doctor's conclusion that a claimant cannot work does not, in and of itself, establish disability. See 20 C.F.R. § 404.1527.

are limited in this entire area, 30% in all angles namely flexion, extension forward, bending and lateral rotation.

Neurological findings are consistent with a multiple neuritis with pains in all trajectories of most of the peripheral nerves. This is probably due to radicular injuries incurred in the original accident and has become progressively worse in the past months.

(Tr. 187, Ex. 30).

In Dr. Stolowski's opinion, Hogan "has a permanent partial physical disability limiting him severely from partaking in a gainful occupation for which he is trained." *Id.*

Hogan's only examination for mental impairments was done by Michael Meade, a clinical psychologist. Meade noted that Hogan had an IQ of 79 which placed him at the borderline-mentally deficient range of intellectual development. Meade also observed that many of Hogan's responses were "indicative of a person with significant neurological impairment" and that significant indications lead to a diagnosis of central nervous system dysfunction". (Tr. 177–79, Ex. 27). Hogan's greatest difficulties were in visual motor integration and short term auditory memory. Accordingly, Meade suggested that Hogan seek jobs with concrete repetitive tasks and, little eye-hand coordination that were isolated or semi-isolating such as truck driver, assembly worker, bench work and repair work. Meade further stated that Hogan sincerely desires going back to work and that there are "no indications of malingering, hypochondriacal or psychosomatic symptoms". Meade therefore felt that Hogan's physical pain was "quite real and obviously restricting". *Id.*

The only vocational evidence was a report by Pat Kirkpatrick, a state rehabilitation counselor. Ms. Kirkpatrick stated that Hogan seemed sincere and motivated but he was having trouble in a basic education course at opportunity school due to his deficient reading and writing skills. (Tr. 164, Ex. 25).

The claimant testified at the hearing and complained of severe pain that limits his ability to stand, walk, bend and move his joints. Hogan stated that his wife helps to wash and dress him and she opens the pill bottle with his pain medications in the morning since he is unable to perform these very simple tasks due to pain. Hogan also stated that he cannot stand the pain without his pain killing medications which include valium, codeine and empirin. Hogan stated that some of these medications make him nauseous, others induce drowsiness and dizziness.

## II. DISCUSSION

### A. STANDARD OF REVIEW

The function of this court on review is not to try the plaintiff's claim *de novo*, but rather to determine upon the whole record whether the secretary's decision is supported by substantial evidence. *Cagle v. Califano*, 638 F.2d 219–221 (10th Cir. 1981). Substantial evidence is more than a scintilla but less than a preponderance. *Laws v. Celebreeze*, 368 F.2d 640, 642 (4th Cir. 1966). It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Wroblewski v. Califano*, 609 F.2d 908, 913 (8th Cir. 1979). It is well settled that if there is substantial evidence to support the secretary's decision then that decision must be upheld. *Cagle v. Califano, Supra* at 220. However, the district court should not blindly affirm the secretary's decision but must instead scrutinize the entire record to determine if the plaintiff's claim has been fairly evaluated and the law has been correctly applied. *Proctor v. Schweiker*, 526 F.Supp. 70, 73–74 (D.Md.1981).

42 U.S.C. § 423(d)(1)(A) defines "disability" as "inability to engage in any substantial gainful activity by reason of any medical impairment that can be expected to last for over 12 months." Section 423(d)(2)(A) further defines disability to mean not only inability to do the previous type of work but also the inability to do any other kind of work which exists in the national economy "considering opportunities that exist either in the claimant's region or in the several regions of the country."

Once the claimant makes a *prima facie* showing of an impairment which effectively precludes him from returning to his past work,[2] the burden shifts to the secretary to show: (1) that the claimant, considering his age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *Salas v. Califano*, 612 F.2d 480, 482–83 (10th Cir. 1979); *Gardner v. Brian*, 369 F.2d 443, 446–47 (10th Cir. 1966).[3]

To regularize the adjudicative process, the Social Security Administration has recently promulgated new and detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to his medical condition. These new regulations were intended both to clarify for claimants how disability is determined when vocational factors are considered and to assure consistent disability determinations at all levels. 43 Fed.Reg.55,349, 55,349 (1978). Codified at 20 C.F.R. Subpart P, §§ 404.1501–1598 & Apps. 1–2 (1980), they became effective February 26, 1979 and governed the ALJ's decision in this case.

These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *Hall v. Harris, supra* at 264.

2. The medical evidence is undisputed that the claimant can no longer perform his former work as a cement finisher. While the ALJ stated that there was evidence in the record that the claimant could perform one of his former jobs as a truck driver, the medical reports do not support that statement. Dr. Warmath merely stated that he had no objection to Hogan being a truck driver if he could do so comfortably and without pain. (Tr. 166, Ex. 26). Michael Meade noted that Hogan's mental impairments would require that he have an isolated or semi-isolated job and mentioned truck driver as such a possible job. None of the reports suggest that given Hogan's pain and physical and mental impairments he can perform the tasks involved in truck driving consistently.

3. A few recent unpublished Tenth Circuit opinions have enunciated a disability test requiring

The procedure has been succinctly described as follows:

The first inquiry under the sequence concerns whether a claimant is currently engaged in substantial gainful employment. If it is found that he is, the claim is denied without reference to the other steps in the sequence. If he is not, the second inquiry is whether the claimant has a "severe" impairment. If he does not, the claim is denied. If a severe impairment is present, the third inquiry is whether such an impairment meets or equals one of the impairments listed under Appendix 1 to Subpart P of the Administrative Regulations No. 4. If it does, the claim is approved. If it does not, the fourth inquiry is whether the claimant's impairments prevent him from performing his past relevant work. If he is found to be capable of returning to his past relevant work, the claim is denied. If he is not found to be so capable, the fifth and final inquiry is whether the claimant is able to perform other forms of substantial gainful activity, considering his age, education, and prior work experience. If he is not the claim is approved.

The medical-vocational guidelines, ("grid")[4] which are contained in Appendices 2, Subparts P and I, Parts 404 and 416, 20 C.F.R., are used in determining whether the claimant is disabled when and if the fifth step in the evaluation process is

an additional step. Under that test, once the secretary shows that a particular claimant has the capacity to perform alternative jobs that exist in the national economy, the burden shifts back to the claimant to show that he can not engage in those types of employment that the secretary has shown to be available for persons suffering from impairments similar to those of the claimant's. *See Biffle v. Harris*, No. 79–2074 (10th Cir., Jan. 19, 1981); *Hart v. Mathews*, No. 77–1869 (10th Cir., Jan. 15, 1979).

4. Because parts are displayable as a simple chart or table, the medical vocational guidelines are commonly called "the grid"—a usage which, though technically limited to the tables themselves, commonly includes the attendant explanatory matter. *See Holmes v. Harris*, Civil Action No. 79–0730–H P.9 (S.D.Ala., Dec. 11, 1980).

reached. To apply the guidelines, the ALJ must make findings of fact as to the claimant's vocational factors, i.e., age, education, and work experience, as those terms are defined by the regulations, 20 C.F.R. §§ 404.1568, 416.960–968, and his residual functional capacity, 20 C.F.R. §§ 404.1545, 416.945 "[W]hen the findings of fact made as to all factors coincide with the criteria of a rule, [contained in the grid], that rule directs a factual conclusion of disabled or not disabled." 20 C.F.R. §§ 404.1569, 416.-969. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981).

## B. THE ALJ's FINDINGS AND DECISION

In the instant case, the ALJ's inquiry reached the fifth step in the sequential evaluation process and he reached his ultimate determination by plugging the claimant's age (younger individual), educational level (limited)[5] and residual functional capacity (sedentary work)[6] into the grid which directed a conclusion that the claimant was not disabled.

TABLE NO. 1—RESIDUAL FUNCTIONAL CAPACITY: MAXIMUM SUSTAINED WORK CAPABILITY LIMITED TO SEDENTARY WORK AS A RESULT OF SEVERE MEDICALLY DETERMINED IMPAIRMENT(S)

| Rule | Age | Education | Previous Work Experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 201.23 | Younger individual age 18–44 | Illiterate or unable to communicate in English | Unskilled or none | Not Disabled |

The ALJ had made the following findings:

1. The claimant met the special earnings requirements of the Act on February 1, 1979, the date that the claimant stated he became unable to work, and continues to meet them through March 31, 1981.

2. The claimant injured his back in a fall on February 1, 1979.

3. The Administrative Law Judge finds the claimant's allegations of constant, disabling pain less then fully credible.

4. The claimant has residual functional capacity to perform work related functions except for work involving heavy exertion.

5. The claimant is unable to perform his past relevant work as a cement finisher.

6. The claimant has residual functional capacity for at least sedentary work as defined in section 404.1567.

7. The claimant is 39 years old and is considered to be a younger individual.

8. The claimant has a second grade education.

9. In view of the claimant's residual functional capacity, the issue of transferability of work skills is not material.

10. The findings concerning the claimant's residual functional capacity and vocational factors coincide with all the criteria of Rule(s) 201.23 Table No. 1 of Appendix 2 to Subpart P, Social Security Regulations No. 4, which direct a conclusion of "not disabled."

11. The claimant was not under a disability as defined in the Social Security Act, as amended, at any time through the date of this decision.

I find that the ALJ's decision is not supported by substantial evidence and his analysis is flawed in several respects.

 First, the ALJ did not adequately follow the procedures enumerated in the guidelines, 20 C.F.R. § 404.1501–1598, Subpart P, Appendix 2, § 200.00(e)(2), where a

---

5. While the ALJ stated that the claimant's education is "extremely limited" (Tr. 17), the evidence shows that Hogan can not read or write and is therefore illiterate. *See* 20 C.F.R. § 404.1564(b)(1). This error is not material since the ALJ applied rule 201.23 which is applicable to illiterate claimants.

6. Sedentary work is defined in 20 C.F.R. § 404.1567(a):

(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

claimant presents evidence of both exertional and non-exertional (mental, sensory or skin) impairments. In these circumstances the grid is not applicable and the ALJ is required to make findings on how much a claimant's work ability is further diminished by the non-exertional limitations and identify specific jobs, preferably with the assistance of vocational expert testimony that the claimant can actually perform. *See Gagnon v. Secretary of Health and Human Services,* 666 F.2d 662 p. 665 nn. 6 & 9 (1st Cir. 1981); *Cannon v. Harris, supra* at 517; *Erber v. Schweiker,* Civil Action No. 81–W–119 (D.Colo., Oct. 19, 1981); *Walker v. Harris,* 504 F.Supp. 806, 811 (D.Kan. 1980); *see also* 20 C.F.R. § 404.1522 which requires the secretary to consider the combined effect of all of a claimant's impairments. The grid assumes that the sole limitation on a claimant's ability to work is lack of strength and it therefore requires an exception where non-strength limitations are present. *See Gagnon v. Secretary of Health and Human Services supra* at *id.*

In the instant case, the evidence indicated that Hogan suffers from significant neurological impairments with his greatest deficiencies in visual motor integration and short term auditory memory. *See supra* at p. 642. Accordingly, the clinical psychologist suggested that Hogan's mental impairments would limit his range of jobs to those with concrete repetitive tasks and little eye-hand coordination. While the ALJ failed to make any explicit finding on Hogan's additional limitations due to these non-exertional impairments, he mentioned the psychologist's report in his decision. However, the ALJ failed to produce vocational expert testimony or other evidence indicating that Hogan could perform the specific tasks involved in any of the suggested or other jobs, given Hogan's combination of exertional and non-exertional impairments.

Similarly, where a claimant cannot perform a full range of sedentary work the grid is not applicable, 20 C.F.R. § 404.1501–1598, Subpart P, Appendix 2, § 201.00(h), and the secretary is required to produce evidence of specific jobs that a claimant can perform, preferably with the assistance of vocational expert testimony. *Proctor v. Schweiker,* 526 F.Supp. 70, 75–76 (D.Md. 1981); *Erber v. Schweiker supra; Moguez v. Harris,* 512 F.Supp. 11 (D.Colo.1980). Hogan's serious deficiencies in eye-hand coordination could preclude a substantial range of sedentary work since approximately 85% of all sedentary jobs involve machine trades and bench work. *See* 20 C.F.R. § 404.1501–1598, Subpart P, Appendix 2, § 201.00(a).

Further, the ALJ failed to give full consideration to all relevant facts in the case, as required by 20 C.F.R. § 404.1501–1598, Subpart P, Appendix 2, § 200.00, in reaching his determination that the claimant could perform alternative work. The ALJ failed to give adequate consideration to the claimant's limitations due to pain, the effects of prescribed medication and the degenerative nature of Hogan's impairments.

The ALJ stated, without explanation, that he found the "claimant's allegations of constant disabling pain less than fully credible". *See supra* at p. 644. While the credibility of a claimant's subjective allegations of pain are to be resolved by the ALJ, there must be some factual basis in the record supporting the ALJ's belief. *Bowser v. Schweiker,* Civil Action No. 81–M–90, P.4 (D.Colo. Sept. 4, 1981); *Weber v. Schweiker,* Civil Action No. 80–M–1260, P.3 (D.Colo. March 25, 1981); *See Garland v. Secretary of Health and Human Services,* 528 F.Supp. 415 (E.D.Mich.1981); *Siburt v. Secretary of Health and Human Services,* 526 F.Supp. 1087 (D.W.Va., 1981); *Vigil v. Califano,* 476 F.Supp. 82, 85 (D.Colo.1979). The ALJ offered no reason why he disbelieved the claimant's allegations of pain.[7] Moreover, there is no evidence in the record which suggests that Hogan is exaggerating the degree of pain he experiences whether the source of his pain is "organic" or "hys-

7. 42 U.S.C. § 405(b) has been interpreted as requiring the secretary to make "full and detailed findings in support of all of his conclu-

sions". *See Ramos v. Secretary of Health and Human Services,* 514 F.Supp. 57, 66 (D.P.R. 1981).

terical". *See Mode v. Celebreeze*, 359 F.2d 135, 136 n.1 (4th Cir. 1966). Hogan's orthopedist, psychologist and rehabilitation counselor all believed that Hogan was highly motivated and sincerely desired going back to work. *See supra* at pp. 641–642.

I note also that pain, when considered alone as a ground for disability must be severe enough to prevent a claimant from engaging in any substantial gainful activity. However, where pain is considered in combination with other impairments, as in the instant case, it need only be significant enough to prevent the claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant might otherwise qualify. *Gagnon v. Secretary of Health and Human Services, supra* at p. 666 n. 8.

Further, the ALJ failed to consider the effects of prescribed medication on Hogan's ability to work. *See Figueroa v. Secretary of H.E.W.*, CCH Unemp. Ins. Rptr. ¶ 15,007 (1st Cir., Oct. 31, 1978); *Gibbs v. Califano*, Civ. No. 76–A–1722 (S.D.Tex., June 1, 1978). While the record is not entirely clear on this point and could use further development, the evidence shows that Hogan has been prescribed valium, codeine and empirin for his pain. Hogan claims that these medications induce drowsiness, dizziness and nausea. *See supra* at p. 642.

The ALJ also gave no consideration to evidence that the claimant's condition was degenerating. *See Yawitz v. Weinberger*, 498 F.2d 956, 961 (8th Cir. 1974); *Bowser v. Schweiker supra* at P. 5. Hogan's most recent medical report by Dr. Stolowski, *see supra* at pp. 641–642, indicated that Hogan's condition had become progressively worse in the last few months and created an "increasing disability". The secretary should develop additional medical evidence to determine whether Hogan's impairments have increased in severity since the initial diagnoses by doctors Franz and Warmath.

Further, the guidelines specifically provide an exception to the grid and a finding of disabled for claimants with characteristics extremely similar to Hogan's. 20 C.F.R. § 404.1501–1598, Subpart P, Appendix 2, § 200.00(h), Example 2 provides:

> An illiterate 41 year old individual with mild mental retardation (IQ of 78) is restricted to unskilled sedentary work and cannot perform vocationally relevant past work, which had consisted of unskilled agricultural field work; his or her particular characteristics do not specifically meet any of the rules in Appendix 2, because this individual cannot perform the full range of work defined as sedentary. In light of the adverse factors which further narrow the range of sedentary work for which this individual is qualified, a finding of disabled is appropriate.

In the instant case, Hogan is 40 years old with an IQ of 79 and is restricted to unskilled sedentary work. He also can no longer perform his past work as a cement finisher. Given Hogan's extreme similarity to the "disabled" profile in example 2, the secretary should enter a finding of disabled on the remand if he entertains any doubts about the claimant's actual ability to perform alternative work.

## C. USE OF THE GRID

Finally there has been much recent litigation and conflicting judicial decisions on the validity and proper use of the grid. Some courts have invalidated the use of the grid to determine a claimant not disabled. *See e.g. Santise v. Harris*, 501 F.Supp. 274 (D.N.J.1980); *Holmes v. Harris*, Civil Action No. 79–0730–H (S.D.Ala., Dec. 11, 1980) *Broz v. Harris*, Civil Action No. 80–0156–H (S.D.Ala., Dec. 11, 1980).

In *Holmes* and *Broz supra*, Chief Judge Hand, using a similar order in both cases, found that the administrative notice of the existence of suitable alternative jobs contained in the grid violated the requirement of the Administrative Procedures Act, 5 U.S.C. § 556(e), that a party be allowed to offer contrary evidence to any administrative notice taken.[8] Chief Judge Hand fur-

---

**8.** 5 U.S.C. § 556(e) provides in part that "when an agency decision rests upon official notice of a material fact not appearing in the record, a

ther held that the secretary's use of the grid in relying on administrative notice not taken at the hearing violated the Social Security Act, 42 U.S.C. § 405(b),[9] the Administrative Procedures Act, 5 U.S.C. § 556(e) and "arguably the Due Process Clause". Judge Hand noted that both acts require that all evidence be produced at the hearing and he rejected the secretary's argument that he complied with these statutes by permitting the claimant to submit a rebuttal affidavit on appeal. He stated:

The administrative notice of jobs taken here was procedurally invalid because there was not even a "quick remark" at the hearing, there was nothing said at the hearing *at all* about the administrative notice which was, then, procedurally improper by reason of 5 U.S.C. § 556(e) and [the] "evidence adduced at the hearing" requirement of 42 U.S.C. § 405(b).

The Secretary contends that there is no such violation because plaintiff can submit a rebuttal affidavit *on appeal* in the Appeals Council. The statute, however, states that the decision must be based on evidence "adduced at the hearing"—it does not say on appeal—and it is inconceivable that in passing 5 U.S.C. § 556(e) Congress meant that the rebuttal evidence should be first offered on appeal. Similarly, the right of the claimant to rebut the underlying findings of actual fact (*e.g.*, age) is not the same as the opportunity to rebut the administratively-noticed fact, namely, the existence of appropriate jobs in the appropriate economy.

*id.* at P. 15–16.

In *Santise v. Harris, supra* the district judge held that the grid violated established interpretations of § 423(d)(2)(A) of the So-

cial Security Act by not sufficiently focusing on the effects of a particular claimant's impairments on that claimant's actual ability to work. He stated:

To put it simply, H.E.W.'s reliance on a grid drawn in advance to cover a wide variety of individual cases, does not satisfy its obligation of basing its conclusion on substantial evidence. An abstract chart in a reference book, keyed to only four factors does not provide the claimant with the individualized consideration of the facts of her own particular case that she is entitled to under the Act. Nor can a chart be cross examined, nor can the claimant do anything to rebut it.

*id.* at 276.

Other courts have upheld the grid's validity against constitutional and statutory challenges. *See e.g. Stallings v. Harris*, 493 F.Supp. 956 (W.D.Tenn.1980); *aff'd Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir. 1981). In *Kirk v. Secretary of Health and Human Services supra* the plaintiffs had alleged that the grid distinctions: 1) were arbitrary and capricious, 2) created unconstitutional irrebuttable presumptions, 3) violated national policy and laws against age discrimination, 4) and failed to provide claimants with the individualized consideration required by both the Due Process Clause and the Social Security Act.[10] The circuit court noted that the grid's distinctions are based on years of the secretary's experience in disability determinations and were therefore not "wholly irrational" or arbitrary. Further, since the guidelines provide that the distinctions based on age are not mechanically applied in borderline situations, the grid did not violate the equal protection clause nor impermissibly discriminate against the elderly.

party is entitled, on timely request, to an opportunity to show the contrary."

**9.** 42 U.S.C. § 405(b) provides in pertinent part that the secretary shall give applicants for benefits reasonable notice and opportunity for a hearing with respect to a decision and if a hearing is held, shall *on the basis of evidence adduced at the hearing,* affirm, modify or reverse his findings of fact and such decision. [emphasis added].

**10.** The court also rejected an argument that the guidelines altered the secretary's judicially created burden of proof by obviating the requirement of vocational expert testimony. The court noted that many previous judicial decisions had stopped short of establishing a *per se* rule requiring vocational testimony anyway.

The court rejected the irrebuttable presumption claim by essentially rejecting the applicability of the frequently criticized irrebuttable presumption doctrine. *See id.* at 533–534 and commentaries cited therein.

On the fourth point, the circuit court reasoned that the guidelines provide adequate individualized consideration since the secretary is still required to provide evidence on each individual's age, education, work experience and residual functional capacity before relying on the grid. The court also noted that claimants can rebut all of the factual findings that make up the components of the grid.

The shortcoming of this analysis on the fourth point is the failure to recognize that people with similar characteristics can react in markedly different ways to the same impairments. *Cole v. Harris,* 641 F.2d 613, 615–16 (8th Cir. 1981); *Mode v. Celebreeze supra* at 136–37; *Allen v. Schweiker,* Slip Opinion. No. C–81–1210 SC (N.D.Cal., Sept. 10, 1981); *Pitcock v. Schweiker,* 520 F.Supp. 1117, 1120 (W.D.Ark.1981). Accordingly, claimants with the same impairments and relative age, education and work experience can have entirely different abilities to perform the actual tasks in the administratively noticed jobs in the grid. Indeed, the guidelines themselves recognize this fact and provide a few examples of individuals that might be exceptions to the grid despite age, education, work experience and functional levels that correspond to a finding of not disabled. These examples are not exhaustive, however, and as mentioned previously, the profile in example # 2 has strikingly similar characteristics to the claimant in the instant case.

Further, while claimants have the opportunity to rebut the factors that comprise the grid, they have no opportunity to rebut the grid's ultimate conclusions and demonstrate that notwithstanding those three or four basic factors, they can not actually perform many of the jobs in a particular category of work.

I nevertheless find that the guidelines and the sequential evaluation process can be constructive and efficient devices to regularize the disability determination process. Accordingly, I note that a great number of courts have adopted an alternative approach. Several courts have upheld the validity of the guidelines and the sequential evaluation process but nevertheless require the secretary to present evidence of a few specific jobs which the claimant can actually perform. *See e.g. Campbell v. Secretary of Health and Human Services,* 665 F.2d 48 (2d Cir. 1981); *Decker v. Harris,* 647 F.2d 291 (2d Cir. 1981); *Arroyo v. Schweiker,* Slip Opinion, No. 80 Civ–5871 (RLC) (S.D. N.Y., Dec. 23, 1981); *Blanchette v. Schweiker,* 523 F.Supp. 338 (D.Colo.1981); *Pitcock v. Schweiker, supra; Allen v. Schweiker,* 520 F.Supp. 1117 (N.D.Cal. 1981); *Powell v. Schweiker,* 516 F.Supp. 1001 (W.D.Ark.1981); *Ramos v. Secretary of Health and Human Services,* 514 F.Supp. 57 (D.P.R.1981); *Desadare v. Secretary of Health and Human Services,* No. 79–6050 (W.D.Ark., May 29, 1981); *Maurer v. Harris,* 502 F.Supp. 320 (D.Ore.1980); *Williams v. Harris,* 500 F.Supp. 214 (D.N.C.1980); *Schmidt v. Harris* CCH Unem. Ins. Rptr. ¶ 17,224, (N.D.Iowa, June 19, 1980); *Phillips v. Harris,* 488 F.Supp. 1161 (W.D.Va.1980); *see Hall v. Harris,* 658 F.2d 260 (4th Cir. 1981), where the Fourth Circuit limited *Frady v. Harris,* 646 F.2d 143 (4th Cir. 1981), to the facts of its case and it remanded a grid case with instructions to use vocational testimony and establish specific jobs that the claimant could perform, *see also Halsted v. Harris,* 489 F.Supp. 521 (E.D.Mo.1980); *but see Simonsen v. Secretary of Health and Human Services,* 512 F.Supp. 1064 (S.D.Cal. 1981) (holding that the grid eliminates the need for both specific jobs and vocational testimony); *but cf. Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315 (1st Cir. 1981) (holding that the secretary in using the grid need not also identify specific jobs where a claimant's only impairment is not severe).

These courts in recognizing the guidelines' potential conflicts with established case law, the Social Security Act and due process, in essence require the presentation

of a few specific jobs that a claimant can actually perform as a sixth step in the sequential evaluation process. Requiring presentation of specific alternative jobs avoids much of the problems of inadequate individualized consideration and rebuttal rights raised in *Holmes v. Harris* and *Santise v. Harris, supra.*

The leading case is *Campbell v. Secretary of Health and Human Services supra.* In *Campbell*, the Second Circuit noted that its previous interpretations of the Social Security Act, both before and after the guidelines' promulgation, have required that the secretary identify specific alternative occupations available in the national economy that would be suitable for the claimant "and that these jobs be supported by a job description clarifying the nature of the job, [and] demonstrating that the job does not require exertion or skills not possessed by the claimant" (citations omitted). *id.* at 53. Previous Tenth Circuit disability opinions, both before and after the guidelines' effective date, have also required that the secretary, often with the assistance of vocational testimony, identify specific jobs that a claimant can actually perform once a claimant demonstrates that he can no longer perform his former work. *See Salas v. Califano, supra* at 483; *Gardner v. Brian, supra* at 446–447.[11] In *Campbell* the Second Circuit stated:

> our major concern is that the claimant be given adequate notice of the nature and demands of the types of jobs allegedly available. Absent sufficient notice, the claimant is deprived of any real chance to present evidence showing that she cannot in fact perform the types of jobs that are administratively noticed by the guidelines. This is particularly true in Ms. Campbell's case where the ALJ gave no indication of any specific "light work"

jobs that she was capable of performing but relied on the guidelines which take notice of approximately 1,600 types of "light work" jobs available in the national economy. 20 C.F.R. Subpart P, Appendix 2, § 202.00. If there are so many types of jobs available, it would not be too great a burden for the Secretary or the ALJ to specify a few suitable alternative available types of jobs so that a claimant is given an opportunity to show that she is incapable of performing those jobs. Moreover, we stress that the jobs should be specified at the hearing so that the claimant has a chance to put evidence into the record on that issue. In Ms. Campbell's case she was not informed of the Secretary's position and the ALJ's findings until she received his decision, when it was too late for her to rebut any finding of available "light work" jobs. In failing to show suitable available alternative jobs for Ms. Campbell, the Secretary's finding of "not disabled" is not supported by substantial evidence.

> Accordingly, we remand this case to the Secretary for further proceedings consistent with this opinion, including a listing of particular types of jobs suitable to the capabilities of Ms. Campbell.

*id.* at 53–54.

█ I hold, following *Campbell* and in recognition of the guidelines' potential conflicts with the Social Security Act, the Administrative Procedures Act, the Due Process Clause, Tenth Circuit precedent and the large body of case law cited *supra* at p. 648, that the secretary, at the hearing, must identify specific jobs that a particular claimant can actually perform, notwithstanding the grid.[12] The point is that the grid is not a panacea; it cannot be used as a substitute for reasoning nor as an escape hatch from responsibility.

---

**11.** The Tenth Circuit cases mentioned previously at n.3 *supra* which require that claimants demonstrate that they cannot perform those types of employment that the secretary has specified, obviously contemplate that the secretary identify specific jobs which the claimants can actually perform and that these claimants be given the opportunity to rebut the conclu-

sion that they can perform such alternative work.

**12.** A requirement of identifying specific jobs that a claimant can actually perform does not imply that the secretary need identify specific employers that are willing to hire a particular claimant. *See* 20 C.F.R. § 404.1566(c); *Gardner v. Brian, supra* at 446.

I note also that several courts have taken this approach one step further and require that the secretary both utilize vocational expert testimony and identify specific jobs, despite the grid. *See e.g. Allen v. Schweiker, supra; Powell v. Schweiker, supra; Ramos v. Secretary of Health and Human Services supra; Desadare v. Secretary of Health and Human Services supra; Maurer v. Harris supra; Williams v. Harris supra; Schmidt v. Harris supra;* [13] *Phillips v. Harris supra; See Hall v. Harris supra; Halsted v. Harris supra.* Certainly, vocational testimony is preferred and when used properly can be a valuable resource in assessing whether jobs exist for a person with the claimant's precise disabilities. *See Martin v. Harris,* 666 F.2d 1153 (8th Cir. 1981). However, I do not think that it is the only way of linking specific jobs to a particular claimant. So long as there is substantial evidence in the record indicating that a particular claimant's specific impairments do not preclude him from performing the actual tasks involved in the suggested jobs, the secretary's decision should not be disturbed. *See Blanchette v. Schweiker, supra.*

### III. DISPOSITION OF THIS CASE

42 U.S.C. § 405(g) authorizes this court to reverse the secretary's decision with or without remanding the cause for additional consideration. This statute contemplates remand for additional evidence only "on good cause shown". *Taylor v. Weinberger,* 512 F.2d 664, 669 (4th Cir. 1975). The determination of just cause required by § 405(g) to justify a remand should be made in the first instance by the district court. *Cagle v. Califano, supra* at 221. The plaintiff has the burden of presenting to the court the grounds upon which he relies to establish just cause for remand to the

secretary and the secretary may rebut these grounds. The court should then determine whether there is just cause to conclude that the secretary's decision might reasonably be different if additional evidence were presented. If just cause is found, the case should be remanded to the secretary for further proceedings. If the court rejects the just cause claim, then the remand should be denied. *id.*

Since I have found that there are several errors in the ALJ's decision and that the determination as a whole is not supported by substantial evidence it is hereby, ORDERED that the secretary's decision be vacated and that this case be remanded to the secretary for consideration of additional evidence consistent with this opinion on:

1) The degree and effects of the claimant's pain;

2) The claimant's limitations due to the effects of prescribed medication;

3) The current condition of the claimant's physical impairments given evidence of degeneration;

4) The combined effect of all of the claimant's exertional and non-exertional limitations;

5) Specific jobs that the claimant can actually perform, preferably with the assistance of vocational expert testimony,

and for further hearing at which the plaintiff is given the opportunity for rebuttal.

---

**13.** In *Schmidt v. Harris,* the district judge went as far as to require that the secretary also produce substantial particularized evidence relating to:

 1) the kinds of skills acquired through education and work experience
 2) the transferability of those skills to other kinds of work, and

 3) particularized specification of the availability of the alternative jobs that the claimant can actually perform in the region where the claimant resides or in other regions in the economy,
before utilizing the grid. *id.*